

Adam M. Gordon, Esq.
Laura Smith-Denker, Esq.
Joshua D. Bauers, Esq.
Ashley J. Lee, Esq.
Esmé M. Devenney, Esq.
Ariela Rutbeck-Goldman, Esq.
Joelle L. Paull, Esq.

January 12, 2026

**Via ECF**
Honorable Zahid N. Quraishi, U.S.D.J.
United States District Court
District of New Jersey
Clarkson S. Fisher Federal Building & U.S. Courthouse
402 East State Street, Courtroom 4W
Trenton, New Jersey 08608

Re:   **Borough of Montvale et. al. v. Matthew J. Platkin et. al.**
      **Case No. 25-cv-3220 (ZNQ) (JBD)**

Dear Judge Quraishi:

Please accept this letter brief in lieu of a more formal submission in reply to Plaintiffs' opposition to the Fair Share Housing Center's motion for leave to appear as *amicus curiae*.

As Your Honor is aware, "[t]he extent, if any, to which an *amicus curiae* should be permitted to participate in a pending action is solely within the broad discretion of the district court." *United States v. Alkaabi*, 223 F. Supp. 2d 583, 592 (D.N.J. 2002) (quoting *Waste Mgmt., Inc. v. City of York*, 162 F.R.D. 34, 36 (M.D. Pa. 1995)). Indeed, there is no rule or statute that prescribes a standard for participation as *amicus curiae* in United States District Courts, and—although the factors set forth in *Alkaabi* that are discussed in Plaintiffs' opposition are often considered by courts in this District,[1] courts typically look to Federal Rule of Appellate Procedure 29 for guidance, and in particular to "the Third Circuit's application of Fed. R. App. P. 29." *Id.*

Under Rule 29, motions to appear as *amicus* should be granted where the movant has shown (1) an adequate "interest" in the case; (2) that their proposed *amicus* brief is "desirable"; and (3) that their proposed *amicus* brief is "relevant to the disposition of the case." Fed. R. App. P. 29(a)(3). Courts have found *amicus* briefs desirable where they are "helpful" to the Court. *Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132–33 (3d Cir. 2002) (Alito, J.); *see, e.g.*, *Stepien v. Murphy*, 574 F. Supp. 3d 229, 235–36 (D.N.J. 2021) (granting leave to appear as *amicus* because the "proposed amicus brief contains a great deal of information related to the [issue in the case] that is helpful to the Court as background."); *W.F. v. Roman Catholic Diocese of Paterson*, Civil Action No. 20-7020, 2021 U.S. Dist. LEXIS 111062, at *11 n.3 (D.N.J. June 7, 2021) (granting leave to appear as amicus where the proposed amicus's "interests . . . [are] clear and it

---

[1] *Alkaabi* did not prescribe a rigid standard but noted that "amicus status is typically granted when: (1) the *amicus* has a 'special interest' in the particular case; (2) the *amicus'* interest is not represented competently or at all in the case; (3) the proffered information is timely and useful; and (4) the *amicus* is not partial to a particular outcome in the case." 223 F. Supp. 2d at 592. The opinion then discussed, and granted, the *amicus* motion of a party though that party had a decidedly "partisan stance." *Id*.

has offered helpful perspective on the public interest surrounding [a] statute.")  As set forth in the Certification of Adam Gordon, ECF No. 33-3, Fair Share Housing Center (FSHC) satisfies all of these criteria and should be permitted leave to participate as *amicus curiae* in this matter: it has a significant and special interest in this case and both its brief, and the argument already provided by the undersigned, sought to assist the Court by offering information which FSHC respectfully submits is highly relevant to and should be helpful to the Court in resolving the issues here presented, *id*. ¶¶ 3–8.

Plaintiffs oppose this *amicus* motion, arguing that FSHC's motion for leave to appear as *amicus* should be denied (and that FSHC's argument of last Wednesday should accordingly be stricken) for two principal reasons: (1) "FSHC's purported interest in this action is well represented by the New Jersey Attorney General," and (2) FSHC is partial to the outcome of this litigation.  ECF No. 45 (Pl.'s Letter Opp.) at 4–10.  But under the appropriate standard, neither the competency of the State Defendants' representation nor FSHC's partiality on the issues are appropriate or sufficient grounds for denying FSHC's motion, as explained below.  Moreover, Plaintiffs' assertions do not stand up to scrutiny: FSHC has a unique interest in this litigation not fully aligned with the State Defendants' and FSHC's brief contributes—as Plaintiffs' vigorous opposition to it suggests—additional, relevant information, not already presented by the State, that FSHC respectfully submits will be helpful in resolving the significant issues of public importance raised in this case.  *See* Fed. R. App. P. 29(a)(3).

### I. The competency of the State Defendants' representation is not a bar to the Court hearing from other parties.

Although courts in this District often consider, among other relevant factors, whether "the *amicus*' interest is not represented competently or at all in the case," *Alkaabi*, 223 F. Supp. 2d at 592, a party's competent representation is not a bar to *amicus* briefs in support of that party.  As then-Judge Alito persuasively explained with regard to this factor in a case that is—unlike the First Circuit and District of New Jersey cases cited by Plaintiffs— binding precedent:

> Rule 29 does not contain any such provision, and therefore if the requirement is valid it must represent an elaboration on the requirement of "desirability" set out in Rule 29(b)(2). In my view, however, such a requirement is most undesirable. To be sure, an amicus brief may be particularly helpful when the party supported is unrepresented or inadequately represented, but it does not follow that an amicus brief is undesirable under all other circumstances.

> Even when a party is very well represented, an amicus may provide important assistance to the court. . . . Accordingly, denying motions for leave to file an amicus brief whenever the party supported is adequately represented would in some instances deprive the court of valuable assistance. Moreover, requiring a prospective amicus to undertake the distasteful task of showing that the attorney for the party that the amicus wishes to support is incompetent is likely to discourage amici in instances in which the party's brief is less than ideal and an amicus submission would be valuable to the court.

*Neonatology Associates, P.A. v. C.I.R.*, 293 F.3d 128, 132 (3d Cir. 2002).[2]  This case illustrates Justice Alito's point: although the Attorney General competently represents the State Defendants in this case, the Court can nonetheless benefit from considering the brief of FSHC, which is an "entit[y] with particular expertise not possessed by any party to the case."  *Id*.

## II. FSHC's interest in this litigation is different from the State Defendants' and not fully represented by the Attorney General.

Even if the adequacy of the Attorney General's representation could be considered a bar to FSHC's participation, in spite of Justice Alito's holding to the contrary in *Neonatology Associates*, Plaintiffs are wrong to assert that the Attorney General adequately represents FSHC's interests with regard to the affordable housing issues in this case.  Plaintiffs claim that FSHC is just a "non-profit entity that happens to support the Law, [which] does not have a personal stake distinguishable from the State Defendants."  ECF No. 45 at 5.  This is far from true.  In fact, although FSHC has intervened on the same side as the State Defendants in the parallel state court case, FSHC has, in the past, often been adverse to the State in affordable housing litigation.  Indeed, the history of *Mount Laurel* litigation demonstrates how, contrary to Plaintiffs' assertions, FSHC and the State Defendants' interests are not the same.  In the parallel state court litigation, Judge Lougy relied on that history to reject the exact same claim raised by Plaintiffs in opposition to FSHC's motion to intervene.  He discussed at length how FSHC's interests were unique and not completely aligned with the State of New Jersey's interests, such that they merited intervenor status to defend the Fair Housing Act that Plaintiffs here challenge.  ECF No. 33-4 at 9–10.  As Judge Lougy put it, "Plaintiffs ask the Court to ignore decades of *Mount Laurel* litigation when they argue that FSHC does not have a distinct interest in this litigation" given FSHC's long history of participation in such litigation.  *Id*. at 9.  FSHC "was primary, along with some municipalities, in successfully challenging several iterations of rules proposed by [the Council on Affordable Housing] and the Department of Community Affairs" and "[a]s the years of litigation between FSHC and [State agencies] demonstrate, their interests do not align, generally."  *Id*.

For these reasons, to the extent the Court need consider the issue at all, FSHC's interests are materially distinct from the Attorney General's interests in defending against this lawsuit.

## III. FSHC is partial to the outcome of this case, and it has a significant and special interest in the issues presented, but that is no reason to deny its *amicus* motion.

As noted, when Plaintiffs brought nearly identical claims in state court, FSHC was granted leave to intervene as a defendant.  Naturally, this fact is an indication that they are exactly the sort of party that should be allowed to be heard, at the very least, as an *amicus curiae* when Plaintiffs bring the same claims in federal court.[3]  But Plaintiffs try to twist that fact against FSHC, claiming essentially that its interest in this case—a requirement for *amicus* participation—is too great.

---

[2] The desirability requirement has since been moved from section (b)(2) to section (a)(3) of Rule 29.

[3] In New Jersey state court, as in federal court, intervening as a party requires demonstrating a more significant interest in the issues being litigated than is required to appear as *amicus*.  FSHC was granted leave to intervene as of right in the state court lawsuit, because Judge Lougy found FSHC satisfied all of the criteria for doing so under N.J. Rule 4:33-1, which uses the exact same language as Federal Rule of Civil Procedure 24(a).  *See* ECF No. 33-4 (Opinion and Order granting FSHC's Motion to Intervene) at 7–11.  Those criteria are, of course, more stringent that are the standards for *amicus* participation.  Nonetheless, FSHC elected not to seek intervention in this case while the court is

It is true that some courts in this District have considered a party's impartiality as a relevant factor in granting *amicus*, and FSHC is undoubtedly partial to the outcome of this litigation. However, as Justice Alito persuasively explained in *Neonatology Associates*, the notion that *amicus* must be impartial "became outdated long ago" and is contrary to both precedent and practice, as well as Rule 29, which actually requires *amicus* to have an interest in the case. 293 F.3d at 131–33; *see* Fed. R. App. P. 29(a)(3); *see also Amicus Curiae*, *Black's Law Dictionary* (12th Ed. 2024) (defining an *amicus curiae* as a non-party who files a brief in an action because they have "a strong interest in the subject matter"). Indeed, Rule 29 explicitly recognizes that *amicus curiae* often explicitly support a party's position, setting forth the timing for filing of a brief based on "the party being supported." Fed. R. App. P. 29(a)(6). Thus, even the cases relied on by Plaintiffs note that "[w]hile the partiality of an *amicus* is a factor to be considered by a court in deciding whether to allow participation, there is no rule that *amici* must be totally disinterested" and an *amicus*'s "partisan stance is not a bar to its appearance as *amicus*." *Alkaabi*, 223 F. Supp. 2d at 592–93.

The notion that *amici* should be impartial is very difficult to square with Rule 29's explicit requirement that *amici* must have an adequate "interest" in the case. Fed. R. App. P. 29(a)(3); *see Neonatology Associates*, 293 F.3d at 131 ("An accepted definition of the term 'impartial' is 'disinterested,' Black's Law Dictionary 752 (6th ed. 1990), and it is not easy to envisage an amicus who is 'disinterested' but still has an 'interest' in the case."). It is even harder to square with the higher threshold for which Plaintiffs argue, which is that *amici* must have a "special interest" in the case. ECF No. 45 at 4 (quoting *Kyocera Document Sols. Am., Inc. v. Div. of Admin.*, 708 F. Supp. 3d 531, 542 n.16 (D.N.J. 2023)). Indeed, the Third Circuit has rejected *amicus* briefs for failure to show sufficient interest in a case. *American College of Obstetricians & Gynecologists v. Thornburgh*, 699 F.2d 644, 645 (3d Cir. 1983).

To be sure, FSHC's partiality in this cannot be disputed: its nonprofit work, since 1975, has been dedicated exclusively to defending the housing rights of New Jersey's low-income households—a public interest mission that makes it an ideal *amicus curiae* in this case. Its mission is to end discriminatory and exclusionary housing patterns that deprive these households of the realistic opportunity to live in safe, decent, and affordable housing with equal access to educational and economic opportunities. FSHC was founded by the plaintiffs and attorneys who brought the original *Mount Laurel* lawsuit,[4] and it has represented the interests of lower-income households in every aspect of litigation and advocacy to enforce *Mount Laurel* ever since then, to such an extent that the New Jersey Supreme Court, in its March 2015 *Mount Laurel IV* decision, required every municipality seeking to obtain an affirmative declaration of constitutional compliance to do so "on notice and opportunity to be heard to FSHC." *In re N.J.A.C. 5:96 and 5:97*, 221 N.J. 1, 29 (2015) (*Mount Laurel IV*). Through these litigation efforts, FSHC has uniquely gained an understanding of the facts on the ground in New Jersey, as well as of the history discussed in its proposed *amicus* brief. *See* ECF No. 33-1 (Proposed Br.). Notably, State Defendants do not have the same

---

considering the State Defendants' motion to dismiss, though, as indicated at the hearing last week, it reserves the right to do so if this case does proceed despite Plaintiffs' lack of standing and failure to state a claim. FSHC well understands that its role as *amicus* is more limited, as Plaintiffs note, and they do not seek to enlarge the issues presented by the parties. *See* ECF No 45 at 10–12.

[4] *S. Burlington Cnty. NAACP v. Twp. of Mount Laurel*, 67 N.J. 151 (1975) (*Mount Laurel I*).

understanding, as they have not generally been parties to such actions; for example, the lengthy trial before Judge Jacobson, an important source of the methodology used in P.L. 2024, c. 2, did not have any participation from State Defendants. *In the Matter of Application of the Municipality of Princeton*, 327 A.3d 505 (N.J. Sup. Ct. 2018).[5]

FSHC respectfully submits that if this lawsuit is successful, it would have a devastating impact on the public interest that FSHC seeks to defend, including on implementation of the settlements it has already reached with many of the Plaintiff municipalities. Plaintiffs' arguments seek to halt enforcement of the *Mount Laurel* doctrine, delay construction of desperately needed affordable housing units, and require FSHC to expend significant resources engaging in protracted disputes over issues (including the streamlined methodology for calculating each municipality's fair share obligation) that the New Jersey Legislature set forth in the Act, after many months of public input and deliberation. *See* N.J. Stat. Ann. § 52:27D-304.2–.3. As New Jersey Superior Court Judge Lougy noted in granting FSHC leave to intervene as a defendant in the parallel state court lawsuit, *Montvale v. State*, N.J. Sup. Ct. Docket No. MER-L-1778-24, "FSHC has represented the interests of lower income families in affordable housing litigation for decades." ECF No. 33-4 at 9. FSHC is thus well positioned to be an *amicus* party here not because of its own interests, but because of its unique experience in advocating for the interests of the underrepresented individuals for whom it advocates.

IV. **FSHC has no objection to allowing Plaintiffs an opportunity to reply, which can include any arguments it wishes to raise as to any portion of FSHC's filing.**

Finally, Plaintiffs request an opportunity to reply to FSHC's proposed amicus brief. Of course, FSHC does not object, reserving its right to file an appropriate reply, if necessary. Likewise, Plaintiffs object to the certification that FSHC included with its filing of David N. Kinsey, Ph. D., P.P., F.A.I.C.P that was submitted in the parallel state court proceedings; that objection is properly considered, if at all, in Plaintiffs actual response to FSHC's amicus brief. That said, if Your Honor chooses to address this argument at this stage, FSHC would note that neither the case law cited by Plaintiffs nor the arguments raised are reasons to strike that certification.

First, FSHC is not raising "new issues," as in the case cited by Plaintiffs, *N.J. Retail Merchs. Ass'n v. Sidamon-Eristoff*, 669 F.3d 374, 382 n.2 (3d Cir. 2012). That case involved an *amicus curiae* trying to resuscitate a claim on appeal that the parties had abandoned. Rather, FSHC,

---

[5] Nor should Plaintiffs' factually incorrect and selective discussion of FSHC's participation in various other state court proceedings bear on this motion. That said, to correct the record and as a further example of FSHC's relevant, on the ground knowledge, FSHC respectfully submits that the Court should know that in the state court process known as the Affordable Housing Dispute Resolution Program: (1) no party actually challenged, or could have challenged, Mannington Township's fair share obligations as that Plaintiff voluntarily chose not to participate at that stage, as noted in the related state court proceeding, ECF No. 27-2 at 14, ECF No. 27-7 at 29; (2) as to the obligation challenges FSHC filed in the other state court dockets cited, ECF No. 45 at 9, FSHC reached settlements as to the applicable fair share obligations with all of the Plaintiffs it initially challenged except for two. As to one of those two, Montvale, Plaintiffs' lengthy quotation of a recent proceeding involving that Borough involves an attempt by Montvale to "settle" with a developer, SHG, so that it could build a data center in lieu of affordable housing, an extraordinary action that FSHC contends is inconsistent with the statute and applicable case law. ECF No. 45-1 at 7. As a result, of all of the Plaintiffs as to which FSHC brought a challenge, only Montvale failed to resolve either the fair share obligation or the fair share plan.

as *amici* commonly do, proposes to provide additional context on the issue raised already by the parties, namely the Qualified Urban Aid Municipality exemption. The facts in the Kinsey Certification are, accordingly, limited to providing United States Census data and data produced by the New Jersey Department of Community Affairs (NJDCA) which are directly relevant to this issue, though, of course, the Court can and will ultimately decide what weight to accord that data.

Second, Plaintiffs state that "[t]he DCA calculations, issued in October 2024, also do not assist in evaluating the rationality of the Law considering they were issued seven months after the Law was enacted. They are also not the subject of dispute in this litigation." ECF No 45 at 12. But this is an odd position indeed given that Plaintiffs' expert report consists in large part of an analysis of the DCA calculations. ECF No. 15 at 79-90. Furthermore, the test for rational basis review, which Plaintiffs and Defendants agree is the appropriate standard, is not the record before the Legislature, but rather whether "there is any reasonably conceivable state of facts that could provide a rational basis for the classification." *F.C.C. v. Beach Commc'ns,* 508 U.S. 307, 313 (1993). Certainly, the DCA calculations of present need to implement the statute are among those facts, although, again, the Court will decide how probative they are.

\* \* \*

In sum, contrary to Plaintiffs' assertions, neither the competency of the State Defendants' representation nor FSHC's partiality to the outcome of this case should prevent the Court from granting its motion to appear as *amicus curiae*. Indeed, Your Honor has considered the views of *amicus curiae* in comparable circumstances to those presented here. For example, in *National Shooting Sports Foundation, Inc. v. Platkin*, the Attorney General was represented by the same competent counsel present here, but Your Honor granted the *amicus* motion of three organizations dedicated to preventing gun violence who were undoubtedly partial to the outcome of that case. *See* D.N.J. Docket No. 22-cv-6646, ECF No. 64 (Order); *Nat'l Shooting Sports Found. v. Platkin*, Civil Action No. 22-6646, 2023 U.S. Dist. LEXIS 16459, at \*14 (D.N.J. Jan. 31, 2023) (discussing arguments raised by *amici*). And in *Kim v. Hanlon*, Your Honor considered the briefs submitted by numerous *amici* who were partial to the outcome of that case, such as the American Civil Liberties Union of New Jersey. No. 24-cv-1098 (ZNQ) (TJB), 2024 U.S. Dist. LEXIS 57533 (D.N.J. Mar. 29, 2024). This case is no different.

For all of these reasons, FSHC respectfully submits that its motion for leave to appear as *amicus curiae* in this matter should be granted. Thank you for your thoughtful consideration of this matter.

Respectfully submitted,

*/s/ Adam Gordon*

Adam M. Gordon, Esq.
Executive Director
Fair Share Housing Center